

# LeaderOne Financial

## Outside Sales Consultant Employment Agreement

THIS AGREEMENT, made and entered into this ___ day of _____, _____, by and between LEADERONE FINANCIAL CORPORATION, a KANSAS CORPORATION organized and existing under the laws of the State of Kansas, with its principal office at 11020 King Street, Suite 390, Overland Park, Johnson County, Kansas, hereinafter referred to as the "Company", and _____, whose address is _____ hereinafter sometimes referred to as "Employee."

WHEREAS, the parties hereto have determined that it is in their mutual interest for the Company to retain Employee's services in an advisory, consulting, and sales capacity, to aid in the successful growth and development of the Company, as well as originating residential mortgage loans.

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL COVENANTS CONTAINED HEREIN, IT IS AGREED AS FOLLOWS:

### SECTION ONE
### DURATION OF EMPLOYMENT

It is agreed Employee will hold the position of outside sales consultant as long as Employee is, in Company's sole opinion, efficient, conscientious, and productive. If Employee is not, in Company's sole opinion, efficient, conscientious and productive, it remains within the discretion of Company to terminate Employee's employment. In such event, Company's only obligation to Employee shall be to pay Employee as provided for in Section 12 of this Agreement.

It is understood and agreed that Company will be the sole judge as to the efficiency with which Employee carries on his work under this agreement, and Company reserves the right, at any time, to terminate Employee's employment under this agreement, without prejudice, and without the right, on the part of Employee, to recover damages from Company on account of any such termination.

### SECTION TWO
### DUTIES OF EMPLOYEE

Employee shall have the following duties:

A. Employee shall devote all of his or her time, energy and attention to the performance of the duties of Employee in accordance with this contract subject to the direction of the company and shall promptly obey all rules, regulations and orders of the company as may be issued from time to time. Employee shall at all times remain courteous, as well as maintain a professional image and conform to standards consistent with company policies and procedures.

B. Employee shall originate mortgage loan applications at the rates which are to be quoted daily by the company or by the company's wholesale investors. Upon the origination of any loan application Employee shall cause to be made a record of the origination on the forms or utilizing the loan origination software which are to be supplied by the company.

C. **Special Instructions.** All monies received shall be turned into accounting, if possible on the day of

receipt and every payment shall be made by check drawn on such account. Employee shall not draw, accept or make any bill of exchange or promissory note on behalf of the company, or otherwise pledge the credit of the company except as authorized in advance by the company.

D. Employee, besides performing his administrative function, must also originate investment quality loans (FHA/VA and/or conventional and choice loans) through selling the investor's loan products and services to the following, including but not limited to developers, realtors, builders, home buyers, home owners, and other potential clients.

E. Employee shall establish and maintain client referral relationships with realtors, builders, and developers, as well as make sales calls on potential or existing customers, as assigned, to develop new business or retain existing business.

F. On each loan Employee originates he shall, throughout every stage of the process, from application to closing, be responsible for communicating, coordinating, and interacting with the applicant as well as all other parties involved, including but not limited to processing, closing, post-closing, management, seller, realtors, builders.

G. Employee, on each loan he originates shall perform the following tasks, including but not limited to: counseling and prequalifying potential home buyers; taking complete and accurate applications; obtaining all necessary support documents, collecting the appropriate fees and lock-in information; overseeing the loan process by monitoring the loan's status and ensuring conformity with terms; assisting in collecting any additional documents that are needed; promptly communicating the loan status to all interested parties, as well as obtaining any and all loan documentation requested by Company or the third party lender who purchased the loan originated by Employee to complete the file after closing.

H. Employee shall also be allowed to negotiate terms and conditions of loans with mortgagors, subject to Company's approval.

I. Employee shall also keep informed of trends, developments and the competitive environment in the local real estate market and residential mortgage lending industry, as well as keeping abreast of the changing rules and regulations pertaining to private and government-insured mortgages.

J. Employee shall at all times remain courteous, as well as maintain a professional image and conform to standards consistent with company policies and procedures.

K. Employee shall be responsible for tracking their own pipeline, generating pipeline reports, maintaining state and federal compliance with appropriate regulatory agencies, dealing with human resources and investor relations, and assuring daily compliance with both state and federal regulations.

L. Employee shall adhere to all applicable state, federal and agency statutes, regulations and policies pertaining to residential real estate lending as now exist, or hereinafter enacted, including, without limitation, the

Federal Truth in Lending Act, the Real Estate Settlement Procedures Act of 1974 as amended, the Fair Credit Reporting Act, the Equal Credit Reporting Act, the Equal Credit Opportunity Act, and the Privacy Act of 1974 as

amended, together with the rules and regulations of the Department of Housing and Urban Development, the Veterans Administration, the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation.

M. Employee shall adhere to Company's policies and procedures regarding residential loan origination and processing now existing or hereinafter enacted. Company reserves the right to changes such policies from time to time and to immediately notify Employee of said change(s).

N. In conclusion, your primary duty is the sale of mortgage loan products to customers of LeaderOne Financial Corporation. You understand and agree that you will spend at least 50% of your time each workweek selling loan products. The types of work activities have been explained in the above paragraphs. In performing your primary duty of selling mortgage loan products, you understand and agree that you will spend at least 50% of your time each workweek away from LeaderOne's primary place of business. In order to fulfill this job requirement, you must meet in person with customers and potential customers at the customer's home, place of work or some other mutually agreeable location. In addition to meeting with customers and potential customers to sell mortgage loan products to satisfy the requirement of spending at least 50% of your time each workweek outside of the principal office for LeaderOne Financial Corporation in your demographic area, you may also meet with potential referral sources and loan product vendors, and engage in marketing and promotion work in support of your own sales of mortgage loan products.

## SECTION THREE
## WORKING FACILITIES

The Company shall furnish Employee with office space at its principal office or branch office, supplies, equipment and such other facilities and services as are suitable to the Employee's position and adequate for the performance of Employee's duties.

## SECTION FOUR
## RELATIONSHIP BETWEEN THE PARTIES

The parties recognize that the Board of Directors of the Company shall manage the business affairs of the Company. The relation between the Company and Employee shall be that of employer and employee. Nothing herein contained shall be construed to give Employee any interest in the physical assets or the accounts receivable of the Company.

## SECTION FIVE
## POWER TO BIND COMPANY

Employee shall have no authority to obligate the Company on any contract or agreement of any kind, character or nature and Employee shall have no authority to borrow funds for the Company or to pledge any of its assets for any purpose whatsoever without the written consent of the Company. Likewise, Employee shall not bring any legal proceedings on behalf of the Company without the written consent of the company.

## SECTION SIX
## RESTRICTIONS

Employee, without the consent of Company shall not be able to (a) endorse any note, or act as an accommodation party, or otherwise become surety for any person; (b) on behalf of the Company borrow or lend money, or make, deliver, accept any extraordinary commercial paper, or execute any mortgage, security agreement, bond, or lease; (c) purchase or contract to purchase, or sell or contract to sell any property for or to the Company, other than the type of property bought and sold in the regular course of its business; (d) assign, mortgage, grant a security interest in the capital assets or property of the Company; or (e) do any other act not specifically authorized herein in Company's name or on behalf of Company without Company's written approval.

## SECTION SEVEN
## COMPENSATION

For the services rendered by the Employee under this Agreement, the Employee shall be entitled to a commission on mortgage loans originated by Employee and subsequently closed. If any mortgage loan does not close, the Employee will not be entitled to any commission. All such compensation shall be clearly delineated in schedules A and B. If Employee is terminated for cause, the compensation schedule will be that of Schedule C.

## SECTION EIGHT
## ALL FEES FROM PROFESSIONAL WORK TO BE PROPERTY OF COMPANY

The Employee agrees that all fees generated by the Employee attributable to the Employee's work shall be the property of the Company and shall be turned over the Company by the Employee, whether or not such payment is made before or after Employee's termination of employment. Such fees include fees all fees earned from loan origination fees, broker fees, and yield spread premium and any other loan origination-related activity. The Employee shall use the Employee's best efforts to have all such payments made payable to the Company. No payments shall ever be made payable to the
Employee. If an Employee has a payment made payable to an Employee then that will be cause for immediate termination under Section 15. This provision shall survive the termination of employment and this Agreement, including any amendments hereto.

## SECTION NINE
## ADDITIONAL COMPENSATION

The commissions earned during a month shall be due and payable the following month for all loans that Employee has closed and on which the Company has been fully funded from the Investor. Company will pay employee on the first and the fifteenth of each month and will provide a commission statement at each pay period end. If any loan originated by Employee that has previously closed has a problem that needs to be cured, or needs to be refunded for any reason, then Company may charge back to the Employee the amount of commission earned. The Employee then shall promptly remit to Company an amount equal to such commission.

The commissions are derived based on the Outside sales consultant Commission Schedule A, attached to this Agreement.

The fees earned for computing an Employee's commission shall not include processing fees or any other

4 of 14
October 5, 2009

ancillary income, unless otherwise specifically stated. Company may modify the Outside Sales Consultant Commission Schedule A and Schedule B at any time, providing it notifies Employee of any change(s) in a timely manner.

## SECTION TEN
## EXPENSES

Employee is entitled to reimbursement of certain expenses, pursuant to Schedule E. Company reserves the right to modify Schedule D at any time, providing it notifies Employee of any change(s) in a timely manner. A timely manner is defined as two week's notice. This Agreement constitutes a plan whereby the Employee is accountable to the Company for substantiating expenses covered by this reimbursement arrangement. Such expenses must be either actually substantiated to the Company or must be deemed substantiated pursuant to the Internal Revenue Service per diem arrangements. The Employee shall include in the expense request for reimbursement the time, place, date business purpose and other individuals involved, as well as a brief description of the specific business being transacted or discussed. In the event that any reimbursement from the Company, whether paid before or after the expense is incurred, cannot be properly substantiated and documented by the Employee for federal income tax purposes, the unsubstantiated amounts (except IRS approved per diem arrangements) must be returned by the Employee to the Company. All assets used in the business of the Company, whether purchased or created by the Company, shall remain the property of the Company, including accounts receivable.

## SECTION ELEVEN
## EXPENSE OF INSURANCE COVERAGE

In addition to the foregoing expenses, the Company shall pay the premiums for insurance coverages for the Employee, as follows:

a. <u>Medical Insurance</u>. Company shall pay half of the cost (up to a maximum of $125) of Employee's monthly health insurance premium.

## SECTION TWELVE
## VACATION LEAVE

The Employee shall not be entitled to any paid vacation time.

## SECTION THIRTEEN
## DEATH DURING EMPLOYMENT
## N/A

## SECTION FOURTEEN
## TERMINATION WITHOUT CAUSE

The first Ninety (90) days of employment represents a probationary period during which time this contract may be terminated by either party at any time. Following the probationary period, this contract may be terminated by either party on not less than fourteen days advance written notice thereof, or on verbal notice confirmed in

writing within such fourteen day period to the other party. However, the Company may terminate the employment hereunder immediately if necessary in its best judgment in order to protect its business or good name.

Following any notice of termination of employment by Employee or Company, Employee shall fully cooperate with Company in all matters relating to the winding up of Employee's pending work and the orderly transfer of any such pending work to other Employees of Company who may be designated by Company. Company shall be entitled to such full-time or part-time services of Employee as Company may reasonably require during all or any part of the fourteen-day period following any notice of termination. Failure to cooperate with Company will result in Employee's commission being reduced by fifty percent.

In the event a party gives more notice than required, the other party may, in its discretion, and without liability, act upon it at the end of the prescribed notice period herein, even if such date is before the termination date specified by the party giving the notice. A notice mailed by one party to the last known address of the other party shall be deemed given when mailed for purposed of this Agreement. If this Agreement is terminated without cause by the Company or by the employee, the provisions of the Covenant Not to Compete section of this Agreement shall not apply to the Employee.

## SECTION FIFTEEN
## TERMINATION FOR CAUSE

This Agreement may be immediately terminated by the Company for cause. In the event that it is terminated for cause, or in the event that the Employee dies or voluntarily ceases to perform under this Agreement, all obligations of the Company to the Employee shall cease. Termination for cause includes termination for the following reasons:

a. Material breach or failure to carry out any term of this Employment Contract.

b. Reporting to work under the influence of alcohol or illegal drugs.

c. Any other current use of illegal drugs; regardless of whether the Employee is at work or away from work.

d. Theft, embezzlement, or willful destruction involving corporate property, including corporate funds or securities.

e. Any other unprofessional conduct such as, but not limited to, the conviction of a felony, which makes the performance of this Agreement impractical with respect to Company property or personnel.

f. Death of the Employee.

g. Willful acts or omissions that are materially inconsistent with the Employee's duties as an employee of the Company.

h. Competition with the Company or personal utilization of opportunities which could be for the benefit of the Company.

i. Inability to perform the essential functions of the Employee's job because of a disability even with reasonable accommodation of the disability.

j. Disclosure or taking of any trade secret or other confidential information of the Company (including customer lists, collection records, customer files, and/or the names of individuals who completed loan applications with the Company).

With respect to items (a) through (j) above except (d), (e), (f) and (j), the Company shall give the

Employee written notice and the Employee shall have thirty (30) days to cure such breach or the Employee's employment shall then be terminated unless this paragraph is waived in writing by the Company.

The termination of this Agreement under this paragraph shall be without prejudice to any rights and remedies which the Company may have against the Employee for breach or nonperformance of any of the provisions of this Agreement.

In the event that the Employee's employment with the Company is terminated for cause, then the Employee hereby agrees to indemnify and hold harmless the Company for any damages caused to the Company (including but not limited to legal fees and court costs) on account of the conduct of the Employee leading to the termination of employment, other than death or disability as defined above.

## SECTION SIXTEEN
## RETURN OF COMPANY PROPERTY UPON TERMINATION

Immediately upon termination of the Employee's employment with the Company, the Employee shall deliver to the Company all documents, notes, records, files or other materials, including incomplete loan applications, whether or not secret or confidential, which are prepared, received collected or otherwise acquired by reason of or in the course of such employment.

Upon termination of this agreement, Employee shall immediately cease to represent Company as an authorized agent or Employee, cease using the company's corporate name, and/or any company trademark, or any near resemblance thereof, as in the opinion of Company would infringe upon or dilute from the names and/or trademarks of Company or that in the opinion of Company bears such near resemblance to any name and/or trademark of Company as might deceive customers or create confusion.

Upon the termination of Employee's employment, Employee shall immediately return to company at its office all of the Company's property in Employee's possession, including but not limited to all of the Company's merchandise, novelties, literature, policy manuals, quote sheets, and lists of lending services, labels, in his possession for use as an Employee of the company, together with all customer records and other records and all information relating to the company's business along with any and all other property belonging to the company, including incomplete loan applications and information pertaining to individuals who had completed loan applications but whose loans had not yet closed. Until all of the above listed items are returned by Employee, the company may withhold any sums due to Employee under the provisions of this agreement.

## SECTION SEVENTEEN
## COMMISSION UPON TERMINATION

As to loans which Employee has originated, and which have been final underwritten and approved but which have not closed prior to his termination, the following will apply:

(1) If Company terminates the Employee and the loan closes within fifteen days then the Employee shall be entitled to the full commission earned on the loan he has originated;

(2) If Company terminates the Employee and the loan does not close within fifteen days of Employee's

termination, then the Employee shall be entitled to fifty percent of the commission earned on the loan originated by the Employee.

(3) If Employee terminates his employment with Company, then the Employee is entitled to fifty percent on the commission earned on the loans the Employee has originated providing the loan closes within fifteen days.

In the event of the death of the Employee, his or her employment shall terminate and 100% of commissions earned on loans originated by the Employee regardless of date of closing.

In the event of illness of the Employee, and if the Employee shall become temporarily or permanently unable to attend to the duties of employment as required by this contract and it becomes necessary for the Company to replace the Employee, then payment of the Employee's commissions shall be done in the same manner as if the Company had terminated Employee.

In the event of the termination of this agreement, the company may delay settlement of monies owed to the Employee for a period not to exceed forty-five days from the closing of the last loan originated by the Employee during his employment. This period will allow the company to collect from the appropriate sources the money it is owed.

In its final accounting with the Employee, the company shall be under no obligation to credit Employee with commissions on loan applications that were taken by the Employee prior to his termination, but were never approved and/or scheduled to close prior to termination of Employee's employment.

## SECTION EIGHTEEN
## RECORDS AND FILES

All customer records, customer histories, Employee notes or personal and regular files concerning customers or prospective customers of the Company or information concerning customers consulted, interviewed or applications taken by the Employee shall belong to and remain the property of the Company. All customers that the Employee brought into the Company during the time of the Employee's employment, along with individuals who have completed loan applications, but whose loans have not yet closed, shall be deemed to remain the Company's customers.

Such customer records and files, along with any computer list or other list of names, addresses, phone numbers, or any or all of same, is a trade secret and proprietary information of the Company. No one without the consent of the Company may disclose same or use same for personal benefit without express written consent. Any copying, disclosure or use of any names, addressed, phone numbers or any lists containing these items is hereby expressly prohibited. Any customer records, customer histories, personal or regular files, customer lists or other lists containing names, addresses or phone numbers, etc., may not be used by a former employee to solicit persons served by the Company.

## SECTION NINETEEN
## NONDISCLOSURE

For the purpose of Section Fourteen of this agreement the following definitions shall apply.

## Definitions

A. "Proprietary Information" means information disclosed either in writing or by oral communication to Employee which is not generally known to the public and which Company deems confidential and which relates to the following, including but not limited to the potential customers and customers of Company, including but not limited to developers, realtors, builders, home buyers, home owners, and other potential clients, customer and client accounts that Company or Company's Employees have originated loans for; the names and contact information of individuals completing loan applications with the Company; fee structures, including but not limited to employees, vendors, secondary market loan purchasers, as well as any company that deals with loan originations on residential and commercial real estate, or provides services to company; any company that company deals with for purchasing Company's loan originations on residential and commercial real estate, servicing and processing residential and commercial real estate loans; customer records, customer histories, or personal and regular files concerning customers of the Employee or customers consulted, interviewed or applications taken by the Employee; customer records, customer histories, or personal and regular files concerning customers of the Company or customers consulted, interviewed or applications taken by the Company; and any other information regarding Company's operation.

B. "Confidential Information" means information disclosed either in writing or by oral communication to Employee which is not generally known to the public and which Company deems confidential and which relates to the following, including but not limited to, Company's operation, trade secrets, know-how, production techniques and processes, marketing, and/or selling of Company services, products or processes; the names and contact information of customers and individuals who completed loan applications with the Company, and; also includes information entrusted to Company by third parties under restrictions relating to confidentiality.

C. Employee agrees to maintain in strict confidence the proprietary and confidential information disclosed to Employee by Company and not to disclose any such information to any third party or entity. Employee further agrees not to disclose any of such information to any other person or entity without the written permission of Company and unless said person or entity agrees to be bound by the terms of this Agreement. Employee further agrees that unless it shall first secure the written consent of Company, it shall not disclose to any of the following people or entities, including but not limited to, potential customers and customers of Company, including but not limited to developers, realtors, builders, home buyers, home owners, and other potential clients; any competitors of company; any company that deals with loan originations on residential and commercial real estate, servicing and processing residential and commercial real estate loans for banks, insurance companies, and secondary market lending services, or a business that provides a service to either of those ventures just mentioned, any vendors and suppliers of company.

D. Employee will not use either the proprietary or confidential information. Employee specifically agrees that it will not use information disclosed to Employee by Company, directly or indirectly, for the purpose of going into competition with Company.

E. All proprietary and confidential information shall remain the property of Company.

F. Upon termination, Employee may take a loan in process to a competitor only with the express written permission of Company, and if Employee makes payment to Company in the amount of Two Thousand, Five Hundred Dollars [$2,500] prior to taking the loan.

## SECTION TWENTY
## COVENANT NOT TO COMPETE

Employee shall devote as much time and attention as is needed as well as his best efforts in discharging his duties in this endeavor. The services that he renders are of a special and unusual character which have a unique value to Company the loss of which cannot adequately be compensated by damages in an action at law. In consideration of the compensation paid and received by the parties hereto, Employee covenants and agrees as follows:

(a) During the term of this Employment Agreement with Company and for a period of sixty days after termination of this agreement, for any reason whatsoever, Employee shall not directly or indirectly, engage in business in competition with Company in a twenty five mile radius from any Company office, or disclose any trade secrets of the Company. The term "engage in" as used above shall include without limitation, owning, financing, aiding or otherwise assisting or participating in the ownership, management, operation or control of, or employment by, or the connection with, in any manner, any business. The phrase "business in competition with Company" as used above shall include without limitation any business that Company ventures into, that deals with loan originations on residential and commercial real estate, servicing and processing residential and commercial real estate loans for banks, insurance companies, and secondary market lending services, or a business that provides a service to either of those ventures just mentioned.

(b) During the term of this employment agreement with Company and for a period of one year after termination of this employment agreement for any reason whatsoever, Employee shall not, directly or indirectly, solicit business from, or attempt to convert to other methods of using the same or similar products or services as provided by Company any customer and prospective customer that Employee was in contact with during the term of his employment.

(c) Any attempt on the part of Employee to induce others to leave company's employment, or any effort by Employee to interfere with company's relationship with other employees, would be harmful and damaging to company. Employee expressly agrees that during the term of this employment agreement and for a period of one year thereafter, he will not in any way directly or indirectly:

(1) Induce or attempt to induce any employee to quit employment with company;

(2) Interfere with or disrupt company's relationship with other employees; and

(3) Solicit, entice, take away, or employ any person employed by company.

(d) If a portion of this agreement is found to be unenforceable, then the remainder of the agreement shall still be in full force and effect.

The Company has made and anticipates, but is not required to make, additional substantial investments in equipment, employment and other contractual commitments in reliance on Employee's representation of Employee's willingness to enter into and perform employment services and this non-compete agreement for the Company. In addition, the Company will introduce the Employee to the local community, including important business and professional contacts. In the event the Employee terminates employment with the Company and works in violation of these provisions, the Company could reasonably be expected to suffer, and it is believed shall suffer, economic harm as a result.

Because the damages which would be suffered by the Company as a result of the breach of this Agreement and covenant may be difficult to ascertain, may not be susceptible of accurate determination, or may be incalculable at the time of breach, Employee agrees that if this covenant is breached, the Employee shall pay part of liquidated damages to the Company in the amount of $15,000.00. The parties agree that this liquidated damage amount is a reasonable estimation of the probable amount of the damages which would be suffered by the Company.

All costs, expenses and attorney's fees incurred by the Company in enforcing this provision, collecting payment hereunder, and in filing any suit at law or in equity as provided below regarding breach of this covenant shall be deemed additional damages due and owing to the Company.

In the event any payments required under this provision (or breach of this provision) are not made within thirty (30) days, for any reason whatsoever (including but not limited to the Employee's bankruptcy), then the Employee shall cease employment in competition with Company for three years from the payment default within the area specified above, which may be enforced by a court through a temporary and permanent injunction and other appropriate relief, and the Employee hereby waives the requirement of posting a bond or other security in such injunction action, and the Employee consents to the issuance of such injunction.

If Employee shall breach any of the prohibitions of this covenant not to compete, then in that event, the time period during which such prohibitions apply shall commence to run not on the termination of the Employee's employment, but on the first day after any and all violations by the Employee of this section of this Agreement finally cease.

The provisions of this Section shall survive any termination of employment and of this Agreement, including any amendments hereto.

The Employee has carefully read and considered the preceding paragraphs of this Section, and, having done so, agrees that the restrictions set forth in this Section, including, but not limited to, the time period of the restriction, and the geographical areas of restriction set forth in this Section, are fair and reasonable and are reasonably required for the protection of the interest of the Company and its officers, directors, and other employees. Employee agrees that these restrictions are important to protect the Company and its referral sources.

Employee represents that the Employee's experience, age, capabilities, health and personal assets are such that this Agreement does not deprive the Employee from either earning a livelihood in the unrestricted professional and business activities which remain open to the Employee or form otherwise adequately and appropriately supporting himself.

The parties hereto agree that all remedies provided herein and otherwise available at law or in equity are cumulative and not exclusive.

## SECTION TWENTY-ONE
## OUTSIDE ACTIVITIES

Employee shall not engage in the practice of loan originations on residential and commercial real estate, servicing and processing residential and commercial real estate loans for banks, insurance companies, and

secondary market lending services except on behalf of the Company unless otherwise specifically provided in writing by an authorized

officer of the Company. Employee may engage in casual transactions and investments not in competition with the Company, so long as they do not detract from the Employee's ability to perform this Agreement.

## SECTION TWENTY-TWO
## REMEDIES FOR BREACH OF CONTRACT

The parties hereto specifically agree that in the event of the breach or threatened breach of any provision of the contract by Employee, irreparable harm will be suffered by Company and the company shall be entitled to injunctions, both preliminary and final, enjoining and restraining such breach or threatened breach. Such remedies shall be in addition to all other remedies available at law or in equity including the company's right to recover from Employee the greater of the following: a) $15,000; or b) the actual damage amount that is a result of a breach of this agreement. The Company shall be entitled to recover its attorney's fees and expenses in any successful action by the Company to enforce this contract.

## SECTION TWENTY-THREE
## BINDING EFFECT

This Agreement shall be binding upon the parties hereto, their legatees, distributees, legal representatives, personal representatives and successors.

## SECTION TWENTY-FOUR
## SEVERABILITY

If any clause or provision herein shall be adjudged invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision, which shall remain in full force and effect. In any successful action by the company to enforce this contract, the company shall be entitled to recover its attorney's fees and expenses incurred in such action.

## SECTION TWENTY-FIVE
## COMPLETE AGREEMENT

This contract supersedes all prior contracts and understandings between Employee and the Company and may not be modified, changed or altered by any oral promise or statement by whosoever made; nor shall any modification of it be binding upon the company until such written modification shall have been approved in writing by an officer of the company.

## SECTION TWENTY-SIX
## WAIVER

If Employee violates any of the provisions of this agreement or if Employee breaches his duty of trust to Company, Company shall have the immediate right to cancel and terminate this agreement without further obligation or liability.

The failure of Company at any time to require performance by employee of any provision expressed in this

agreement shall in no way affect Company's right thereafter to enforce such provision, nor shall the waiver by Company of any breach of any provision expressed in this agreement be taken or held to be a waiver of any succeeding breach of any such provision or as a waiver of a provision itself.

## SECTION TWENTY-SEVEN
## EMPLOYMENT BY SUBSIDIARY

If the Company owns, acquires or forms subsidiary companies or becomes connected with other affiliate companies, the Employee agrees to be employed by any of the same and in such event all of the terms and conditions set forth herein shall bind the parties.

## SECTION TWENTY-EIGHT
## NUMBER AND GENDER

In the above contract, the use of any particular gender or the plural or singular number is intended to include the other gender or number as the text of this contract may require.

## SECTION TWENTY-NINE
## PARTIAL INVALIDITY

The invalidity of any portion of this agreement will not and shall not be deemed to affect the validity of any other provision. In the event that any provision of this agreement is held to be invalid, the parties agree that the remaining provisions shall be deemed to be in full force and effect as if they had been executed by both parties subsequent to the expungement of the invalid provision.

## SECTION THIRTY
## PARAGRAPH HEADINGS

The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

## SECTION THIRTY-ONE
## NOTICES

Any notice provided for or concerning this agreement shall be in writing and shall be Notices are deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this Agreement.

## SECTION THIRTY-TWO
## PERSONAL SERVICES AGREEMENT

This Agreement and all rights and benefits hereunder are personal to Employee and neither this Agreement nor the rights of employment hereunder, shall be voluntarily or involuntarily sold, transferred or assigned.

## SECTION THIRTY-THREE

*Janes*

## SECTION THIRTY-THREE
## GOVERNING LAW

This Agreement is made in the State of Kansas and shall be governed by and construed in accordance with the laws of the State of Kansas. The courts of the state of Kansas shall have jurisdiction over any dispute which arises under this contract, and each of the parties shall submit and hereby consents to such courts exercise of jurisdiction.

## SECTION THIRTY-FOUR
## WAIVER OF CONFLICT OF INTEREST

The parties to this Agreement acknowledge that this Agreement has been prepared by Charlie Hyland, Attorney at Law, on behalf of the parties hereto. There is an inherent potential for conflicts of interest among the parties to this Agreement because this Agreement establishes the rights and obligations of each of the parties to this Agreement. Due to such potential conflicts of interest, Hyland Law Firm has advised and hereby advises each of the parties that it would be in their best interest to obtain the services of their own independent legal counsel to review this document. Notwithstanding the fact that the Hyland Law Firm has prepared this Agreement and has provided legal advice to one or more of the parties in preparation of this Agreement and in related matters, the parties hereby waive any potential conflicts of interest that may arise as a result of the above actions by the Law Firm, whether or not one or more of the parties to this Agreement may have consulted with separate legal counsel concerning this Agreement.

IN WITNESS WHEREOF, each party to this agreement has caused it to be executed at _____ on the date indicated below.

LEADERONE FINANCIAL CORPORATION

BY: _____

ITS: _____Branch Manager_____

Dated: __1/20/10__

EMPLOYEE

_____

Page 14 of 14
October 5, 2009

CHECKLIST (please initial)
Outside Sales Agreement



*[initial]* I understand that all monies received in the process of orgination of my work with LeaderOne shall be made payable to LeaderOne. To do otherwise is grounds for immediate termination

*[initial]* I understand that when a customer locks in their rate, I am to turn in that locked in rate immediately AND lock the rate with the secondary desk of LeaderOne. To be otherwise is grounds for immediate termination.

*[initial]* I understand that I can work for only LeaderOne Financial Corportation in the mortgage industry. To work in another aspect of the real estate industry MUST be approved in writing both by the Title One Manager and by the corporate office. To work in another field outside and unrelated to the mortgage and real estate industry requires written approval by your Tier One Manager.

Print your name __Brian David__

Sign your name __[signature]__

Date __1-20-1010__